UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO GARRETT,<br><br>  Plaintiff,<br><br>  v.<br><br>TP-LINK RESEARCH AMERICA CORPORATION,<br><br>  Defendant. | Case No. 20-cv-03491-SI<br><br>**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 19 |

Plaintiff has filed a Complaint which seeks damages and injunctive relief based on defendant's alleged direct and indirect infringement of two patents held by plaintiff. Dkt. No. 1. Defendant now moves to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 19. For the reasons set forth below, the Court **GRANTS** defendant's motion to dismiss the Complaint, with leave to amend.

**BACKGROUND**

On May 22, 2020, plaintiff Antonio Garrett ("Garrett") filed this patent infringement action against defendant TP-LINK RESEARCH AMERICA CORPORATION ("TPRA") and its "line of Kasa® security cameras." Dkt. No. 1 (Complaint). The Complaint alleges direct, indirect, and willful infringement of two patents held by Garrett: U.S. Patent Nos. 9,854,207 ("the '207 patent") and 10,511,809 ("the '809 patent"). *Id.*

The patents-at-issue generally relate to methods and apparatuses for mobile surveillance. Dkt. No. 1 ¶ 8. These inventions include "a camera for monitoring a surveillance area and a mobile device for receiving surveillance information from the camera." *Id.*

On December 26, 2017, the '207 patent was duly and legally issued by the U.S. Patent and

Trademark Office. *Id.* ¶ 10. The '207 patent contains four independent claims, which include both system and method claims. Dkt. No. 1-1 (the '207 patent). Method claims 1, 10, and 18 require a "server," a "mobile device," and a "camera." *Id.* Claim 19, a system claim, requires only a "mobile device" and a "camera." *Id.* Independent claim 19 is alleged as representative of the claims recited in the '207 patent. Dkt. No. 1 ¶ 13. This claim states:

> A mobile surveillance system, comprising:
>
> a mobile device configured to communicate with at least one camera positioned at a surveillance area, wherein the at least one camera captures surveillance data of the surveillance area; and
>
> the mobile device is configured to control activation of the mobile surveillance system, and control start and stop of the capture of the surveillance data, and transfer of the surveillance data, wherein, the surveillance data is wirelessly communicated directly from a transmitter linked to the camera to the mobile device; and
>
> the mobile device is further configured to activate upon detection of motion at the surveillance area,
>
> wherein the detection of motion detects variations in motion measurements at the surveillance area; and
>
> wherein the mobile device activates when the motion measurements exceeds a determined threshold.

Dkt. No. 1-1 at 13 (the '207 patent).[1]

On December 17, 2019, the '809 patent was duly and legally issued by the U.S. Patent and Trademark Office. Dkt. No. 1 ¶ 11. The '809 patent contains three independent claims, all of which are method claims. Dkt. No. 1-2 (the '809 patent). Claim 1 requires a "server," a "mobile device," and a "camera." *Id.* Claims 10 and 18 require only a "mobile device" and a "camera." *Id.* Independent claim 10 is alleged as representative of the claims recited in the '809 patent. Dkt. No. 1 ¶ 14. This claim states:

> A method for conducting surveillance, comprising:
>
> receiving an instruction from a mobile device to control start and stop of capture of surveillance data at a surveillance area;
>
> capturing the surveillance data by a camera at the surveillance area, wherein the camera is operably engaged to a motion detection mechanism for detecting variations

---

[1] All page numbers listed hereafter refer to the ECF branded numbers.

in motion measurements at the surveillance area; and

transferring said surveillance data to the mobile device when the motion detection mechanism obtains a motion detection measurement that exceeds a predetermined threshold indicating the surveillance area is unsecure,

wherein the mobile device displays a datebook comprising days of the week and times of day that can be synchronized with an application of the user device to schedule the transferring of surveillance data.

Dkt. No. 1-2 at 13 (the '809 patent).

On July 30, 2020, TPRA filed the instant Motion to Dismiss, arguing that the Complaint should be dismissed in its entirety because it fails to recite a plausible claim of patent infringement. Dkt. No. 19.  In his Opposition filed August 13, 2020, Garrett sought leave to amend the Complaint to remove, without prejudice, the allegations of willful infringement, but otherwise opposed TPRA's motion.  Dkt. No. 20.  TPRA filed a Reply on August 20, 2020.  Dkt. No. 22.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los*

*Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

## I.  Direct Infringement

For a direct infringement claim, Garrett must allege that TPRA, "without authority, makes, uses, offers to sell, sells, or imports any patented invention within the United States during the term of the patent." 35 U.S.C. § 271(a).

### A.  The System Claims

TPRA makes several arguments for why the system claims fail. TPRA argues that it does not make or sell mobile devices, which are an essential part of practicing the patents-at-issue.[2] TPRA also states it cannot infringe based on "use," arguing that it does not "put the invention into service" and that Garrett has not sufficiently alleged that TPRA has "used" the accused products in an infringing manner, such as by "using" the accused products similar to an end-user. Dkt. No. 19 at 12.

#### 1.  "Make" or "Sell" Claims Against TPRA

As to TPRA's first argument—that TPRA does not make or sell mobile devices—Garrett

---

[2] TPRA also argues that any claims for direct infringement based on "offers to sell" or "imports" under 35 U.S.C. § 271(a) fail for the same reason that it argues the "sell" allegations fail. Dkt. No. 19 at 11 n.1.

United States District Court
Northern District of California

4

counters that TPRA is making "essentially non-infringement arguments disguised as a Rule 12(b)(6) motion." Dkt. No. 20 at 10. In other words, Garrett argues that TPRA is presenting evidence to dispute the Complaint rather than claiming there are insufficient allegations within the Complaint, itself. Garrett is correct that TPRA argues facts not found in the Complaint. At the motion to dismiss stage, the Court is required to look at the complaint and accept as true all the well-pleaded factual allegations within it. *Iqbal*, 556 U.S. at 678. Therefore, the Court will not consider TPRA's allegations that TPRA does not distribute "mobile devices" and instead considers the specific allegations in the Complaint.

The Federal Circuit has stated that "[i]n order to 'make' the system under § 271(a), [the direct infringer] would need to combine all of the claim elements." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011); *see also EBS Auto. Servs. v. Ill. Tool Works, Inc.*, No. 09-CV-996 (JLS) (MDD), 2011 WL 4021323, at *6 (S.D. Cal. Sep. 12, 2011). Similarly, in order to prevail under a "sale" theory of infringement, all the elements of the claim must be present in the accused systems allegedly sold by TPRA. *See Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1345 (Fed. Cir. 2019). Therefore, in order to plead a direct infringement claim under a "make" or "sell" theory, Garrett must plead enough facts to show that TPRA makes or sells mobile devices, an element of the representative patent claim. *See* Dkt. No. 1 ¶ 13.

Here, Garrett has not alleged that TPRA manufactures, sells, offers to sell, or imports mobile devices as part of the accused products. Instead, Garrett only alleges that "[e]ach [accused product] includes a surveillance device and an *application* for installation on a mobile device." *Id.* ¶ 17 (emphasis added). An application to be installed on a mobile device is not the same thing as the "mobile device" itself. Therefore, there are no allegations that TPRA makes or sells a "mobile device" to consumers, and Garrett does not argue otherwise in his Opposition.

### 2. "Use" Claims Against TPRA

TPRA argues that the Complaint does not sufficiently allege that TPRA directly infringes by "using" the system under § 271(a) in a similar way to an end-user. Dkt. No. 22 at 9. Garrett

1  disagrees. He points to paragraphs 17-23 of the Complaint as well as numerous photographs in
2  Exhibit C of the Complaint. Dkt. No. 20 at 8-9. Garrett primarily relies on *Disc Disease Solutions*
3  *Incorporated v. VGH Solutions, Incorporated*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) in support of
4  his argument that these allegations, combined with the photographs, are sufficient to survive a
5  motion to dismiss. *Id.* at 10.

6  In *Disc Disease*, the Federal Circuit reversed a dismissal under Rule 12(b)(6). The court
7  noted that the case involved "a simple technology" (a spinal brace and a method of manufacturing
8  a wrinkled band) and the patents consisted of only four independent claims. *Disc Disease*, 888 F.3d
9  at 1260. The complaint identified the three accused products by name and attached photos of the
10 product packaging. *Id.* In this context, the Federal Circuit found that allegations that certain of the
11 defendant's products met each and every element of at least one claim was "enough to provide [the
12 defendant] fair notice of infringement of the asserted patents." *Id.*

13 However, it is not clear from the Complaint that this case involves "simple technology," and
14 Garrett does not argue that it does. Moreover, as TPRA notes, the defendant in *Disc Disease* was
15 alleged to have directly infringed under a "makes" or "sells" theory, not under a "uses" theory.[3]
16 Dkt. No. 22 at 8. Although it pre-dated *Disc Disease*, the district court's explanation in *North Star*
17 *Innovations, Incorporated v. Micron Technology, Incorporated*, is instructive; in that case, which
18 involved a Flash device and SDRAM device, the Court stated:

19 > Some patents and patent claims may require the patentee to provide more detail than
20 > others. The Court can imagine that as to some types of straightforward apparatus
> claims, for example, simply setting out what the patent claims require and then
21 > reproducing a picture of an accused product (perhaps with a little explanation of what
> is depicted) might be all that is needed. As to other apparatus claims, such as those
22 > implicating more complicated technology like that at issue here, more is likely going
> to be necessary.

23 No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *3 (D. Del. Nov. 16, 2017), *report and*
24 *recommendation adopted*, No. CV 17-506-LPS-CJB, 2018 WL 11182741 (D. Del. Jan. 3, 2018).

25

26 ---
[3] Garrett also cites *Gamevice, Inc. v. Nintendo Co., Ltd.*, No. 3:18-cv-01942-RS, 2018 WL
27 5310792 (N.D. Cal. Aug. 6, 2018). However, *Gamevice* relies on *Disc Disease*, and similarly
involved claims based on the "makes" or "sells" theory of direct infringement rather than a "uses"
28 theory.

Here, Garrett makes arguments in his Opposition that are not clear from the face of the Complaint, such as citing to select photographs in Exhibit C, which is nearly 120 pages long. *See* Dkt. No. 1-3. Garrett alleges in the Complaint that the infringing products *can be* used in an infringing manner but does not allege that TPRA has ever "used" a "mobile device" or assembled the system with a "mobile device" in an infringing manner. *See* Dkt. No. 1 ¶¶ 19-21, 27. Nor does Garrett allege merely that "each and every element" of any claim is met. *See id.* Instead, Garrett relies in his brief on Exhibit C to support the allegation that TPRA has assembled and used the accused system with a "mobile device." Dkt. No. 20 at 9-10 (citing Dkt. No. 1, Ex. C at 32, 35, 55, 57). These photos do not show the mobile device assembled with the other required parts of the patent, such as the surveillance system and motion detection system. In other words, there is nothing to suggest that these images were the direct result of infringing activity. Nor does Garrett fix these deficiencies through specific allegations.[4] As presently framed, the allegations of the Complaint and Exhibit C, even taken together, do not plausibly allege that TPRA "used" the accused system in an infringing manner.

Accordingly, TPRA's motion to dismiss is **GRANTED** as to the system claims, with leave for Garrett to amend the claims.

### B. The Method Claims

Similarly, TPRA argues that direct infringement of the method claims was not sufficiently pled because Garrett failed to plead that each and every element of at least one method claim was met. Dkt. No. 19 at 13. Garrett argues that the allegations alongside the documents in Exhibit C of the Complaint are sufficient to plead such infringement. Dkt. No. 20 at 10.

Direct infringement of a method claim occurs "where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Because methods cannot be sold in the same way as devices,

---

[4] The Complaint also references a TPRA instructional video that shows a graphical display of a phone setting up the surveillance system. Dkt. No. 1 ¶ 23. However, the Complaint likewise fails to allege that the video was the result of infringing activity or whether the video shows the system being combined.

7

the sale of a product for performing a claimed method does not constitute direct infringement. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012). In *Sentius*, the court recently held that "if the accused infringer controls the equipment (or the user) that performs any claimed step, it may be liable for direct infringement, but if the end user controls the device that performs the entire method, no direct infringement can be found." *Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-CV-00477-YGR, 2020 WL 2850286, at *4 (N.D. Cal. June 2, 2020).

TPRA's argument is largely the same as for the system claims, above. Garrett makes no separate argument to support its claim of direct infringement of the method claims, arguing that "[t]he complaint's allegations . . . taken together with photographs depicting TPRA's direct infringement of the asserted system and method claims which were attached to the complaint as Exhibit C, are more than sufficient to put TPRA on notice of its infringement." *See* Dkt. No. 20 at 10. In the Complaint, Garrett does not allege that TPRA "used" the accused products in an infringing manner, but only that they *could be* used in such manner. *See* Dkt. No. 1 ¶¶ 19-21. The instructional video referenced in the Complaint does not illustrate the motion detection feature in action. *See id.* ¶ 23. Therefore, not all elements of the method claims would be met based purely on the video. Further, the documents in Exhibit C portray snapshots in isolation. *See, e.g.*, Dkt. No. 20 at 9-10. As explained in Section I.A.2, above, it is hard to infer from these images that TPRA directly infringed the patented claims, and Garrett does not fix these deficiencies with specific allegations.

Accordingly, TPRA's motion to dismiss is **GRANTED** as to the method claims, with leave to amend.

## II. Indirect Infringement

### A. Contributory Infringement

To establish contributory infringement, Garrett must show: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial noninfringing uses, and (4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *accord Koninklijke Philips N.V.*

8

*v. Zoll Med. Corp.*, 656 F. App'x 504, 522 (Fed. Cir. 2016).

TPRA argues that Garrett has not pled sufficient facts to support a claim that any user—whether TPRA or an end-user—has directly infringed the patents-in-suit using the accused products. Dkt. No. 22 at 11. The Court agrees. "Unless the claim language only requires the capacity to perform a particular claim element," the Federal Circuit has "held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *See Fujitsu Ltd.*, 620 F.3d at 1329 (in the summary judgement context). However, Garrett merely alleges that the accused products *can be* used in an infringing manner and that these products are sold by TPRA. *See* Dkt. No. 1 ¶¶ 15, 19-21. Garrett alleges that TPRA "currently provides, uses, and operates – and/or directs or instructs others in the use and operation of – [the accused products]," Dkt. No. 1 ¶ 23, but this fails to allege that those users subsequently use those products *in an infringing manner*. As such, the first element of contributory infringement is not sufficiently alleged.

TPRA also argues that Garrett has not pled sufficient facts to show that TPRA had knowledge of the patent before the filing of this suit. Dkt. No. 19 at 15. Garrett appears to concede this point, citing to the allegations in the Complaint that "[b]y no later than the time of the filing of this action, TP-Link knew or should have known that its actions constitute infringement of the" patents-in-suit. Dkt. No. 1 ¶¶ 39, 52; Dkt. No. 20 at 11-12, 14-15. Garrett quotes *Skyworks Solutions*: "In the Northern District of California, courts have concluded that for a claim of induced infringement, knowledge of the patent can be established through the filing of the complaint, but the claim for induced infringement is limited to post-filing conduct." Dkt. No. 20 at 11, 14 (quoting *Skyworks Sols. Inc. v. Kinetic Techs. Inc.*, No. C 14-00010 SI, 2014 WL 1339829, at *3 (N.D. Cal. Apr. 2, 2014)). Because Garrett has pled post-filing knowledge, Dkt. No. 1 ¶¶ 39, 52, this element is met, but the claim for contributory infringement will be limited to post-filing conduct.

Lastly, TPRA argues that there are clear substantial noninfringing uses for the accused products on the face of the Complaint, such as live streaming, two-way audio, smart sirens, use on non-mobile devices, sound detection, and control of other smart home products. Dkt. No. 22 at 13. The Federal Circuit has held that "an infringer does not evade liability by bundling an infringing

device with separate and distinct components that are capable of noninfringing use." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). "[D]isabling the patented feature altogether [is] a separate and distinct mode of operation." *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 524 (Fed. Cir. 2016). In assessing whether an asserted noninfringing use was "substantial," the relevant considerations are "the use's frequency, but also the use's practicality, the invention's intended purpose, and the intended market." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010).

Drawing all reasonable inferences in favor of Garrett, the asserted noninfringing uses are not clearly "substantial" on the face of the Complaint. Notably, TPRA argues that its alleged noninfringing uses "are all non-infringing uses of the accused products because none require use of motion detection." Dkt. No. 22 at 13. Because disabling the motion detection feature would be a separate and distinct mode of operation, *see Koninklijke*, 656 F. App'x at 524, it is reasonable to infer that TPRA's asserted noninfringing uses are not "substantial," at least at the pleading stage of the case.

Nonetheless, because Garrett has failed to sufficiently plead direct infringement by a consumer, he has failed to plead a claim for contributory infringement. Accordingly, TPRA's motion to dismiss the claim of contributory infringement is **GRANTED**, with leave to amend.

### B. Inducement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To prevail on inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008).

As with contributory infringement, there is a problem with finding direct infringement by the consumers. To state a claim for induced infringement, a plaintiff needs to plead "facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012). While Exhibit C of the

1  Complaint contains various instructions to a consumer that, when combined, could produce an
2  infringing mode, the Complaint does not allege anywhere that a user actually employs that infringing
3  mode or that TPRA instructs a user to infringe. *Compare* Dkt. No. 1 ¶ 27 ("[TPRA] currently
4  provides, uses, and operates—and/or directs or instructs others in the use and operation of—its
5  Kasa® surveillance system.") *with Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 WL
6  2047553, at *4 (N.D. Cal. May 2, 2018) ("[T]he amended complaint alleges Apple 'intentionally
7  instructs its customers to *infringe* through training videos, demonstrations, brochures, and
8  installation and user guides.'"). Garrett merely alleges that TPRA instructs consumers on the use
9  of the accused systems, Dkt. No. 1 ¶ 27, but there are arguably numerous noninfringing uses. As
10 such, Garrett's Complaint does not contain sufficient allegations to satisfy the direct infringement
11 element of inducement.

12  TPRA also argues that knowledge was not adequately pled. Dkt. No. 19 at 15. As discussed
13 above with regard to contributory infringement, knowledge of the patent can be established through
14 the filing of the Complaint, but in such instances the claim for induced infringement is limited to
15 post-filing conduct. *See Skyworks*, 2014 WL 1339829, at *3. Because Garrett alleges knowledge
16 from the filing of the suit, Dkt. No. 1 ¶¶ 39, 52, this element is sufficiently pled, but the claim for
17 induced infringement will be limited to post-filing conduct.

18  Finally, TPRA argues that Garrett failed to sufficiently plead that TPRA had specific intent
19 to cause infringement. Dkt. No. 19 at 15. Garrett counters that advertisements and instructions to
20 engage in an infringing use are enough to show an affirmative intent to cause infringement. Dkt.
21 No. 20 at 12 (citing *Symantec Corp. v. Veeam Software Corp.*, No. 3:12-cv-00700-SI, 2012 WL
22 1965832, at *4 (N.D. Cal. May 31, 2012)). TPRA replies that such advertisements and instructions
23 are only sufficient when there are allegations setting forth the similarities between the claims of the
24 patents-in-suit and the accused products or "specific allegations about how defendants have
25 advertised an infringing use or instructed customers or third parties regarding how to engage in an
26 infringing use." Dkt. No. 22 at 12 (quoting *Bascom Research LLC v. Facebook, Inc.*, No. C 12-
27 6293-SI, 2013 WL 968210, at *5 (N.D. Cal. Mar. 12, 2013)).

28  TPRA's reliance on *Bascom* is misplaced. Here, while Garrett does not describe how the

advertisements or instructions specifically relate to the claims of the patents-in-suit, he does allege similarities between the claims and the accused products. *See* Dkt. No. 1 ¶¶ 18-21. It would be reasonable to infer from these similarities which instructions and advertisements are relevant to the alleged inducement. Additionally, this Court has repeatedly held that knowledge of the patents-in-suit may be alleged through the filing of the complaint. *See, e.g., Skyworks*, 2014 WL 1339829, at *3. This suggests that, at least, TPRA is aware of the lawsuit and the possibility that their products are infringing. Garrett alleges that TPRA is displaying and advertising its products through "summary descriptions, pictures, videos, and technical specifications," Dkt. No. 1 ¶¶ 22-23, and that TPRA currently "directs or instructs others in the use and operation of" its accused products. *Id.* ¶ 27. Taken in combination, Garrett is alleging that TPRA is currently advertising and displaying the infringing uses with the knowledge of the current lawsuit and the patents-in-suit. *See also id.* ¶¶ 39, 52 ("[TPRA] knew or should have known that its actions constitute infringement of the [patents-at-issue]. And yet [TPRA] has continued in its infringement."). Therefore, Garrett has pled enough facts to allege the specific intent element of inducement.

However, because the direct infringement element is not met, Garrett has not sufficiently pled a claim for inducement. Accordingly, TPRA's motion to dismiss the claim for inducement is **GRANTED**, with leave to amend.

### III.     Willful Infringement

"In the interest of simplifying the issues before the Court and avoiding an otherwise unnecessary hearing," Garrett has requested leave to amend his Complaint to remove the willful infringement claim and the corresponding request for enhanced damages. Dkt. No. 20 at 13. "However, Mr. Garrett reserves the right to conduct discovery and, if additional facts further supporting a finding of willfulness come to light, to subsequently amend the Complaint to re-assert willful infringement and a request for enhanced damages at that time." *Id.* The Court **GRANTS** plaintiff leave to amend the Complaint to remove his claims of willful infringement, without prejudice.

**CONCLUSION**

For the reasons stated in this Order, the Court **GRANTS** defendant's motion to dismiss the Complaint, with leave to amend. Plaintiff's amended Complaint is due no later than **September 28, 2020.**

The initial case management conference is rescheduled to **November 6, 2020, at 2:30 p.m.** The Court anticipates the case management conference will be conducted via conference call and will circulate a call-in number to the parties in advance of that date.

**IT IS SO ORDERED**.

Dated:  September 14, 2020

_____
SUSAN ILLSTON
United States District Judge