1
2
3
4                             UNITED STATES DISTRICT COURT

5                           NORTHERN DISTRICT OF CALIFORNIA

6

7    ANTONIO GARRETT,                          Case No. 20-cv-03491-SI

8                    Plaintiff,

9          v.                                  ORDER DENYING DEFENDANT'S
                                               MOTION TO DISMISS THE FIRST
10   TP-LINK RESEARCH AMERICA                  AMENDED COMPLAINT
     CORPORATION,
11                                             Re: Dkt. No. 35
                    Defendant.
12

13

14         Now before the Court is defendant's motion to dismiss the first amended complaint.  Dkt.

15   No. 35.  This matter came on for videoconference hearing on November 13, 2020.  For the reasons

16   set forth below, the Court **DENIES** the motion to dismiss.

17

18                                        **BACKGROUND**

19         On May 22, 2020, plaintiff Antonio Garrett ("Garrett") filed this patent infringement

20   action against defendant TP-Link Research America Corporation ("TPRA") and its "line of Kasa®

21   security cameras."  Dkt. No. 1 (Complaint).  On September 14, 2020, this Court granted TPRA's

22   motion to dismiss Garrett's original complaint, with leave to amend.  Dkt. No. 32 (Order on First

23   Motion to Dismiss).  On September 25, 2020, Garrett filed his First Amended Complaint ("FAC").

24   Dkt. No. 34.  The FAC contains several new allegations.  Most notably, the new allegations map

25   the accused products to the claim limitations.  *See id.* ¶¶ 35-40, 42-45.  The FAC also alleges that

26   "[t]he Kasa® surveillance system products cannot be used, tested, or demonstrated without a

27   mobile device on which to install the Kasa® mobile application."  *Id.* ¶ 18.  Moreover, the FAC

28   includes two claims charts for the patents-at-issue.  *See* Dkt. Nos. 34-4, 34-5.

(sidebar) United States District Court
Northern District of California

The FAC alleges direct and indirect infringement of two patents held by Garrett: U.S. Patent Nos. 9,854,207 ("the '207 patent") and 10,511,809 ("the '809 patent").   Specifically, Garrett alleges TPRA directly infringes the system claims of the '207 patent, *see id.* ¶¶ 33, 51, and that TPRA indirectly infringes the system and method claims of both the '207 patent and the '809 patent, *id.* ¶¶ 20-21.[1]   The patents-at-issue generally relate to systems and methods for mobile surveillance.   *See id.* ¶ 8.   These inventions include "a camera for monitoring a surveillance area and a mobile device for receiving surveillance information from the camera."   *Id.*

On December 26, 2017, the '207 patent was duly and legally issued by the U.S. Patent and Trademark Office.   *Id.* ¶ 10.   The '207 patent contains four independent claims, which include both system and method claims.   Dkt. No. 34-1 (the '207 patent).   Claims 1, 10, and 18 require a "server," a "mobile device," and a "camera."   *Id.*   Claim 19, a system claim, requires only a "mobile device" and a "camera."   *Id.*   Independent claim 19 is alleged as representative of the claims recited in the '207 patent.   FAC ¶ 13.   This claim states:

> A mobile surveillance system, comprising:
>
> a mobile device configured to communicate with at least one camera positioned at a surveillance area, wherein the at least one camera captures surveillance data of the surveillance area; and
>
> the mobile device is configured to control activation of the mobile surveillance system, and control start and stop of the capture of the surveillance data, and transfer of the surveillance data, wherein, the surveillance data is wirelessly communicated directly from a transmitter linked to the camera to the mobile device; and
>
> the mobile device is further configured to activate upon detection of motion at the surveillance area,
>
> wherein the detection of motion detects variations in motion measurements at the surveillance area; and
>
> wherein the mobile device activates when the motion measurements exceeds a determined threshold.

Dkt. No. 34-1 at 13 (the '207 patent).[2]

On December 17, 2019, the '809 patent was duly and legally issued by the U.S. Patent and

[1] Garrett has dropped his claims for direct infringement of the '809 patent and for willful infringement.

[2] All page numbers listed hereafter refer to the ECF branded numbers.

Trademark Office.  FAC ¶ 11.  The '809 patent contains three independent claims, all of which are method claims.  Dkt. No. 34-2 (the '809 patent).  Claim 1 requires a "server," a "mobile device," and a "camera."  *Id.*  Claims 10 and 18 require only a "mobile device" and a "camera."  *Id.* Independent claim 10 is alleged as representative of the claims recited in the '809 patent.  FAC ¶ 14.  This claim states:

> A method for conducting surveillance, comprising:
>
> receiving an instruction from a mobile device to control start and stop of capture of surveillance data at a surveillance area;
>
> capturing the surveillance data by a camera at the surveillance area, wherein the camera is operably engaged to a motion detection mechanism for detecting variations in motion measurements at the surveillance area; and
>
> transferring said surveillance data to the mobile device when the motion detection mechanism obtains a motion detection measurement that exceeds a predetermined threshold indicating the surveillance area is unsecure,
>
> wherein the mobile device displays a datebook comprising days of the week and times of day that can be synchronized with an application of the user device to schedule the transferring of surveillance data.

Dkt. No. 34-2 at 13 (the '809 patent).

On October 9, 2020, TPRA filed the instant Motion to Dismiss, arguing that the FAC should be dismissed in its entirety because it fails to recite a plausible claim of patent infringement.  Dkt. No. 35.  In his Opposition filed October 23, 2020, Garrett argued that he sufficiently amended his complaint to plead infringement by TPRA.  Dkt. No. 37.  TPRA filed a Reply on October 30, 2020.  Dkt. No. 38.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

United States District Court
Northern District of California

relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I.    Direct Infringement by TPRA

Garrett alleges that TPRA directly infringes the system claims of the '207 patent, arguing that TPRA "makes and uses the patented system by combining each and every element of system claims recited in the asserted patents[.]"  FAC ¶ 32.  In its motion to dismiss, TPRA contends that Garrett has failed to allege a plausible claim that TPRA "makes" or "uses" the accused products in an infringing manner, arguing that (a) Garrett relies on evidence previously found to be insufficient by this Court, (b) the newly added allegations are conclusory and contradict prior allegations, and (c) the remaining allegations are based on "use" of the accused products in advertisements, which are "mere demonstrations" that cannot amount to infringement.  Dkt. No. 35 at 9-12.  Additionally, in its reply brief, TPRA argues that Garrett's "make" claims are dependent on his "use" claims, so the "make" claims should also be dismissed.  Dkt. No. 38 at 7.

### A.    Garrett May Rely on the Evidence in Exhibit C.

As to TPRA's argument that the FAC should be dismissed because the FAC relies "primarily on evidence that this Court previously found to be insufficient," such as 120 pages of

users guides and the promotional videos on TPRA's website, *see* Dkt. No. 35 at 10, the Court disagrees.

Most of the substantive allegations of the original complaint were contained in six paragraphs. *See* Dkt. No. 1 ¶¶ 17-21, 27. Garrett relied almost entirely on Exhibit C, which was 120 pages of TPRA instruction manuals and user guides, to allege infringement. *Id.* While it was possible that TPRA or an end user *could have* infringed, this Court found that the complaint failed to affirmatively allege that anybody actually infringed. Dkt. No. 32 at 7. Garrett has now added additional allegations to the FAC which map the exhibits to the claims and focus those claims to specific conduct by TPRA and its end users. *See, e.g.*, FAC ¶¶ 35-40 (mapping an illustrative example of a use of the accused products to the patented claims). Additionally, the FAC now includes two claim charts—one for each of the patents-at-issue. *See generally*, Dkt. Nos. 34-4, 34-5. This is meaningfully different from the rather bare allegations of the original complaint.

Moreover, the Court did not previously find Exhibit C to be per se deficient. As this Court stated in its first order dismissing the complaint:

> Some patents and patent claims may require the patentee to provide more detail than others. The Court can imagine that as to some types of straightforward apparatus claims, for example, simply setting out what the patent claims require and then reproducing a picture of an accused product (perhaps with a little explanation of what is depicted) might be all that is needed. As to other apparatus claims, such as those implicating more complicated technology like that at issue here, more is likely going to be necessary.

Dkt. No. 32 at 6 (quoting *North Star Innovations, Incorporated v. Micron Technology, Incorporated*, No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *3 (D. Del. Nov. 16, 2017), *report and recommendation adopted*, No. CV 17-506-LPS-CJB, 2018 WL 11182741 (D. Del. Jan. 3, 2018)). The Court therefore disagrees with TPRA's premise that Garrett may not rely on Exhibit C to support the allegations in the FAC.

**B.    The New Allegations Are Not Conclusory, and Any Contradictory Allegations Are Not Fatal.**

TPRA also argues that the FAC "only adds legal conclusions couched as factual allegations that should be given no weight" or allegations that are "rank speculation and plainly

incorrect." Dkt. No. 35 at 11-12.

The Court disagrees that the FAC only adds conclusory allegations. As described earlier, the FAC adds several allegations which map specific uses of the accused products to the claim limitations. *See* FAC ¶¶ 35-40, 42-45. Additionally, Garrett now alleges that "[t]he Kasa® surveillance system products cannot be used, tested, or demonstrated without a mobile device on which to install the Kasa® mobile application." *Id.* ¶ 18. This is supported by statements on TPRA's website, which Garrett cites in the FAC, *see id.* ("All Kasa Cams require and only work with the Kasa for Mobile App."), as well as by the user manuals attached in Exhibit C, *see, e.g.*, Dkt. No. 34-3 at 14 (instructing users how to set up the surveillance system using the mobile application). These allegations are not conclusory.

TPRA also takes issue with the new allegation from the FAC that states, ". . . TP-Link also made and/or used each and every element of the patented system during each Kasa® product's development and/or testing, and TP-Link continues to make and use the entire patented system each time it tests or demonstrates its Kasa® products or a feature thereof." Dkt. No. 35 at 12 (quoting FAC ¶ 46). In its motion, TPRA argues that "Garrett focuses on combining the application with a mobile device during testing, but he ignores the combination's non-infringing uses." *Id.* In its reply brief, TPRA somewhat re-frames this argument, taking the position that this allegation contradicts the evidence Garrett relies on, namely the video referenced in the FAC, *see* FAC ¶¶ 43-35. TPRA states this video was "a staged commercial," showing a blank screen, that contradicts the allegation that TPRA "make[s] and use[s] the entire patented system each time it tests or demonstrates its Kasa® products or a feature thereof." Dkt. No. 38 at 8; FAC ¶ 46.

Even if TPRA is correct that some of Garrett's allegations contradict other allegations or the exhibits, such contradictions are not fatal at this stage of the case. The cases on which TPRA relies do not mandate dismissal of the action but rather stand for the proposition that inconsistent allegations in a complaint may be disregarded or read in light of the other allegations (even if from previous complaints in the same matter). *See* Dkt. No. 38 at 12 (citing *J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*, No. 18-CV-03886, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019); *Schneidereit v. Tr. of the Scott & Brian, Inc.*, No. 11-CV-06919, 2012 WL 12884908,

at *1 n.5 (C.D. Cal. Apr. 27, 2012); *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1076–77 (E.D. Cal. 2011)).  For instance, in *Schneidereit*, the district court found that "the Court may consider Plaintiffs' prior allegations in determining the *plausibility* of their allegations in the TAC."  2012 WL 12884908, at *1 n.5 (emphasis in original).  "In light of Plaintiffs repeatedly admitting in prior pleadings that they defaulted," the district court found that "their new, unsupported, and contradictory allegation" that Plaintiffs did not default was implausible.  *Id.*  And in *J. Edwards Jewelry*, the district court simply found that eliminating allegations and exhibits in an amended complaint did not change the court's analysis because the court could still "consider the prior allegations [from earlier complaints] as part of its 'context-specific' inquiry."  2019 WL 2329248, at *4 (quoting *Cole v. Sunnyvale*, No. C-09-05017 RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)).

At this stage, and based on the pleadings and exhibits on file, the Court will not find that any contradictory allegations warrant dismissal.  In light of the other allegations, it is reasonable to read the allegation in question, ¶ 46, as alleging that TPRA infringes during its product development and testing of the accused products or certain features thereof, at least insofar as TPRA "makes" or "uses" the accused products or certain features thereof in the manner described in the other allegations.  Under a reasonable reading of the FAC, Garrett is alleging that TPRA makes and uses the entire patented system when it tests or demonstrates its Kasa® products or a feature thereof.  The Court will not dismiss the FAC based on contradictory allegations.

### C.   Garrett Alleges a Plausible Claim of Infringing "Use."

TPRA argues that "the mere demonstration or display of an accused product, even in an obviously commercial atmosphere[,] is not an act of infringement for purposes of [35 U.S.C.] § 271(a)," and therefore TPRA's promotional demonstrations cannot amount to infringing "uses." Dkt. No. 35 at 9-10 (quoting *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1140 (Fed. Cir. 2008)).  Garrett argues that TPRA's reliance on *Medical Solutions* is misplaced because "[w]hile the mere display of an accused product is not a 'use' under § 271(a), putting the product into service through a demonstration is."  Dkt. No. 37 at 10.  Garrett also points to subsequent

7

cases that have "confirm[ed] that a demonstration can, in fact, be an infringing use." *Id.* at 12

(citing *Marposs Societá Per Azioni v. Jenoptik Auto. N. Am.*, 262 F. Supp. 3d 611 (N.D. Ill. 2017);

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009)).

The Court is not persuaded by either party's position.  TPRA is correct that some courts

have routinely held that the "mere demonstration or display of an accused product, even in a[n]

obviously commercial atmosphere, does not constitute an infringing use."  *See, e.g., Intermedics,*

*Inc. v. Ventritex, Inc.*, 775 F. Supp. 1269, 1286 (N.D. Cal. 1991), *aff'd*, 991 F.2d 808 (Fed. Cir.

1993); *see also L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294, 1298 (C.D. Cal. 1994);

*EBS Auto. Servs. v. Ill. Tool Works, Inc.*, No. 09-CV-996 JLS (MDD), 2011 U.S. Dist. LEXIS

102163, at *46 (S.D. Cal. Sep. 12, 2011); *Advanced Semiconductor Materials Am. v. Applied*

*Materials, Inc.*, No. C-93-20853 RMW, 1995 U.S. Dist. LEXIS 22123, at *16 (N.D. Cal. July 7,

1995).  However, those cases were decided before or did not grapple with the standard announced

in *Centillion*, where the Federal Circuit defined "use" as "put[ting] the system into service, i.e., . . .

exercis[ing] control over, and *benefit[ting] from*, the system's application."  *See Centillion Data*

*Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1282 (Fed. Cir. 2011) (quoting *NTP, Inc.*

*v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005)) (emphasis added).  It is

conceivable that under certain circumstances a demonstration could result in a "benefit" to the

alleged infringer similar to how the invention would "benefit" consumers when "used" for its

intended purpose.  Nevertheless, this Court is not convinced that the Federal Circuit has overruled

prior decisions finding that a demonstration did not amount to an infringing use.  In *Medical*

*Solutions*, the court simply expressly did not reach the question of whether a demonstration could

ever constitute an infringing "use."  541 F.3d at 1141 ("In this case we need not (and do not)

decide whether the demonstration of a product at a trade show could ever be sufficient to establish

an infringing use").

This Court need not resolve this issue today because the FAC pleads more than a "mere

demonstration" to constitute an infringing "use," such as through TPRA's product development

and testing of the accused products.  The Federal Circuit "has established that testing is a use of

the invention that may infringe under § 271(a)."  *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d

United States District Court
Northern District of California

1364, 1366 (Fed. Cir. 2001) (citing *Roche Prods. v. Bolar Pharm. Co.*, 733 F.2d 858, 863 (Fed. Cir. 1984)). "Nevertheless, the infringer must use the 'patented invention.'" *Id.* It is hard to imagine a scenario where, prior to discovery, a plaintiff can sufficiently uncover evidence of internal business practices—like in-house testing—for purposes of supporting the allegations of a complaint. At some point, a plaintiff must rely on reasonable inferences drawn from the other available evidence at its disposal. Garrett asserts that the allegations regarding testing are "based on a reasonable inference made from available evidence." Dkt. No. 37 at 16. And courts are required to "draw all reasonable inferences in favor of the plaintiff." *See Usher*, 828 F.2d at 561. So, the question is whether Garrett's inferences are reasonable.

As discussed above, even if it is implausible that TPRA infringes "each time" it conducts a test of the accused systems, *see* FAC ¶ 46, there is sufficient support for the allegation that some testing has resulted in an infringing "use" by TPRA. Specifically, Garrett alleges that "[t]he Kasa® surveillance system products cannot be used, tested, or demonstrated without a mobile device on which to install the Kasa® mobile application." *Id.* ¶ 18. Garrett also describes how the accused products work, *see id.* ¶¶ 19-26, and maps specific uses of the products to the patent claims, *see id.* ¶¶ 42-45. Moreover, Garrett created two claims charts which map the evidence to specific claim limitations. *See generally* Dkt. Nos. 34-4, 34-5. This evidence of TPRA instructing customers on how to use the accused products in an infringing manner, as well as evidence of TPRA actually using the products in a manner that plausibly meets each of the claim limitations, constitutes sufficient circumstantial evidence at the pleading stage to support Garrett's claim that TPRA used the accused products in an infringing manner during product development and testing. *See EBS Auto. Servs.*, 2011 U.S. Dist. LEXIS 102163, at *47-48 ("Plaintiffs contend that ITW's internal documents, training materials, and advertisements illustrate that ITW trains users on and tests the BrakeTech. This circumstantial evidence of use is sufficient to justify a jury verdict in Plaintiffs' favor."); *Nat'l Instruments Corp. v. The MathWorks, Inc.*, 113 F. App'x 895, 898 (Fed. Cir. 2004) (per curiam) ("The evidence of MathWorks' training materials, which teach how to use Simulink to perform the infringing methods, and the evidence presented that Simulink was designed to infringe during its normal use presents substantial evidence for the jury to find either

direct or induced infringement.").

Tthe Court finds that Garrett has sufficiently pled a plausible claim that TPRA "uses" the accused products in an infringing manner.

### D.      Garrett's "Make" Claims are Plausible.

In the first motion to dismiss, this Court held that Garrett had not sufficiently pled a claim of direct infringement for a "make" claim.  Dkt. No. 32 at 5.  In reaching that decision, the Court found that "Garrett ha[d] not alleged that TPRA manufactures . . . mobile devices as part of the accused products."  *Id.*  And, while TPRA could have combined a third-party mobile device with the accused products to constitute a "make" claim, this Court also found that the original complaint merely alleged that the accused products *could be* combined in an infringing manner but not that TPRA actually combined the system in an infringing manner.  *Id.* at 6 ("Garrett alleges in the Complaint that the infringing products *can be* used in an infringing manner but does not allege that TPRA has ever . . . assembled the system with a 'mobile device' in an infringing manner.").

"In order to 'make' the system under § 271(a), [the direct infringer] would need to combine all of the claim elements."  *Centillion*, 631 F.3d at 1288.  A direct infringer does not need to manufacture each individual component; instead, that infringer need only assemble the infringing components together such that the combination is infringing.  *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378 (Fed. Cir. 2017) ("Although Lifetime did not allege that Trim-Lok made the RV onto which it installed the seal, Lifetime did allege that Trim-Lok installed the seal onto the RV; that is, Lifetime alleged that Trim-Lok made an infringing seal-RV combination.").[3]

Here, Garrett alleges that a mobile device is required for the accused products to operate. FAC ¶ 18.  Further, as described in section I.C above, Garrett describes how the accused products are made to infringe, *see id.* ¶¶ 19-26, and maps specific uses of the products to the patent claims,

---

[3] To the extent that the Court's prior order implied that Garrett must allege that TPRA manufactures the mobile device in order to state a "make" claim, the Court agrees with Garrett that this was in error.

United States District Court
Northern District of California

*see id.* ¶¶ 42-45.  Because the system must be assembled before it can be used, there are sufficient allegations in the FAC that TPRA "makes" the accused products in an infringing manner.

Accordingly, the Court **DENIES** TPRA's motion to dismiss Garrett's claims of direct infringement because there are plausible allegations that TPRA "makes" and "uses" the accused products in an infringing manner.

## II.  Direct Infringement by End Users

Because the Court previously ruled on the other indirect infringement elements and TPRA does not raise challenges to those previously decided issues, the only remaining issue in dispute is whether there are sufficient allegations of direct infringement of the '207 patent and the '809 patent by end users.  TPRA argues that the FAC should be dismissed because the allegations of infringement by the end users are essentially the same as those against TPRA, the pleading language is merely a recitation of the claim language, and the only factual allegations are plainly incorrect based on the FAC, itself.  Dkt. No. 35 at 13-14.  TPRA also argues that "Garrett does not allege how an end user could perform each step that is required to be performed by a mobile device processor (as opposed to a mobile device operated by a user)" and "Garrett does not allege how a user could perform each step of a method that requires performing a step on a request by the same end user."  *Id.* at 14-15.  Garrett counters that the allegations against the end users are amply supported in the FAC, Dkt. No. 37 at 17-18, and, "like in *Centillion*, all of the asserted method steps are performed by devices under the end user's control and for the user's benefit, and would not occur but for the user's actions in assembling the system,"  *id.* at 19-20 (citing *Centillion*, 631 F.3d at 1285).  The Court agrees with Garrett.

First, Garrett is correct that *Centillion* is controlling.  There, the Federal Circuit found that functions performed by geographically remote, back-end servers were still attributable to the end user because "it is the customer initiated demand for the service which causes the back-end system to generate the requisite reports.  This is 'use' because, but for the customer's actions, the entire system would never have been put into service."  *See Centillion*, 631 F.3d at 1285.

Similarly, here, the user that sets up the surveillance system with the mobile device would

"control" the system and "put it into service."  As Garrett alleges, the accused products cannot function without a mobile device on which the mobile application is installed.  FAC ¶ 18. Therefore, at this stage of the case, it is reasonable to infer that any actions that occur through components of the mobile device or the surveillance system hardware are "put into service" by the user during the setup and operation of the system.

Second, as described above, there is evidence of TPRA instructing its users on how to assemble and use the accused products in a manner which would infringe the '207 patent.  Dkt. No. 34-3 at 14-18.  There are also allegations of TPRA promoting specific uses of the accused products that, at this stage, plausibly could be infringing.  FAC ¶¶ 42-45.  As such, Garrett has sufficiently pled the claims of indirect infringement for the '207 patent.  *See also Nat'l Instruments*, 113 F. App'x 895, 898 ("The evidence of MathWorks' training materials, which teach how to use Simulink to perform the infringing methods, and the evidence presented that Simulink was designed to infringe during its normal use presents substantial evidence for the jury to find either direct or induced infringement.").

As to the '809 patent, the only additional claim limitation requires a "datebook comprising days of the week and times of day that ***can be*** synchronized with an application of the user device to schedule the transferring of surveillance data."  Dkt No. 34-2 at 13 (emphasis added).  The FAC alleges that end users use the mobile application of the accused products "to schedule the transfer of the surveillance data using a datebook that includes days of the week and times of day."  FAC ¶ 26.  The instruction manuals and user guides instruct end users how to use the "datebook" to schedule when the camera will automatically turn On/Off.  *See* Dkt. No. 34-3 at 17.

TPRA argues that turning the camera On/Off is not the same as "scheduling the transfer of surveillance data."  Dkt. No. 38 at 17.  But TPRA acknowledges that "a camera cannot capture video unless it is on," and whether "a camera is surveilling may affect what motion is detected." *Id.*  Therefore, it is possible that turning the camera On/Off could schedule the transfer of surveillance data because surveillance data cannot be received (and thereby transferred) when it is off.  At this stage of the case and drawing all reasonable inferences in favor of Garrett, a reasonable reading of the "datebook" in the accused products is that this "datebook" schedules the

United States District Court
Northern District of California

1    transferring of surveillance data insofar as no surveillance data can be transferred while the camera

2    is off, but surveillance data can be transferred while the camera is on.

3          Accordingly, the Court finds that Garrett has plausibly alleged that TPRA indirectly

4    infringed.  Therefore, the Court **DENIES** TPRA's motion to dismiss Garrett's claims for indirect

5    infringement.

6

7    **III.    Other Arguments**

8          Finally, TPRA moves to dismiss all claims of patent infringement for failure to allege

9    sufficient facts showing that certain claim limitations are met by the accused products.  Dkt. No.

10   35 at 15.  First, TPRA moves to dismiss all independent claims (except claim 19 of the '207

11   patent) "[b]ecause the transferring of video to the mobile device is caused *by the user* selecting the

12   video in the application," and, therefore, "it is not caused by the motion detection mechanism as

13   required by the asserted claims." *Id.* at 16 (emphasis in original).  Specifically, TPRA points to

14   the claim language that requires the transfer of surveillance data "when" motion is detected past a

15   certain threshold. *Id.*  Second, TPRA argues that for each claim of the '809 patent, "Garrett reads

16   out the limitation 'synchronized with an application of the user device,' which then permits him to

17   argue that the datebook from the Kasa application (not a datebook from the mobile device) meets

18   the recited 'datebook' limitation." *Id.* at 17.  Third, TPRA argues that "Garrett's allegation that

19   the notification from the Kasa application 'activates' the mobile device is not plausible because

20   the notification is coming from the server and not the mobile device processor.  Indeed, because a

21   user may be using his/her mobile device when receiving the notification, it will not always

22   'activate' upon receipt of the notification because it may already be 'active.'" *Id.*

23         Each of TPRA's arguments is essentially a claim construction argument couched in terms

24   of a non-infringement argument.  As such, the Court finds that these issues are more appropriate

25   for resolution at the claim construction stage and will not dismiss the FAC on these grounds.

26

27                                   **CONCLUSION**

28         For the foregoing reasons and for good cause shown, the Court hereby **DENIES** TPRA's

United States District Court
Northern District of California

13

motion to dismiss Garrett's First Amended Complaint.

   **IT IS SO ORDERED**.

Dated:  November 23, 2020

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California